Pena v. City of Rio Grande City, Texas, Mr. Jones. Your Honors, and may it please the Court, Robert Jones on behalf of the appellants. This case is about a juvenile United States citizen who was deprived of her constitutional rights and then denied her day in court. This Court should reverse and remand this case to the District Court for two main reasons. First, Ms. Pena's second amended petition, which was filed in state court and later removed to federal court, stated claims for excessive force against the individual officers. And second, justice requires that either Ms. Pena be given leave to amend her complaint or that the Texas Notice Pleading Standard, which is what her complaint was drafted to comply with, be used to judge the sufficiency of that complaint. To my first point, Ms. Pena's second amended petition stated claims for excessive force against the two officers. For an excessive force complaint, Ms. Pena needed to plead fact showing an injury which resulted from a use of force which was clearly excessive and the excessiveness of which was clearly unreasonable. In this case, the injury is clear. The record is rife with references in the complaint pled that Ms. Pena had teeth injuries. Her face was bloodied and cut as a result of falling face first into the ground after being tased in the back of the head. And on pages 207 to 209 of the record are the photographs of that. As far as the excessiveness and the unreasonableness of the force, this Court has said that we look to the Graham factors. Those factors are the severity of the crime at issue, whether Ms. Pena posed a threat to the officers or others, and whether she was resisting arrest or attempting to evade arrest by flight. In this case, all three of the Graham factors weigh in Ms. Pena's favor. When you say or others, our Court has said others can include oneself. Is that correct? I did not see that case, Your Honor, but if you're saying... Trammel, in the Trammel decision? Yes, sir. Yes, sir. That is true. So, if the police officer comes to a domestic disturbance and they want to control the situation, and then there's headlong flight from that, arguably putting the child in danger, wouldn't we have multiple Graham factors or, and this is a compound question, so answer as you think is best, or at least no clearly established law that would tell a police officer when they're just stepping in to help, kid runs towards the street, they can't seize, as in Your Honor, two points to that. First of all, at the stage we're at, we have to take Ms. Pena's pleaded allegations as true, and in her complaint, she doesn't say, and there's no evidence that she was going to run into the street or that she posed a danger to herself. To your hypothetical, that would be a closer case, Your Honor, but on the facts of this case, Ms. Pena was running toward a back alley, and we don't know whether she was going to turn left or right. There were four police officers on the scene. What they did by tasing her in the head is ensure that the thing which they say they most feared, which was her going into the street, could have happened. She fell face first and ended up just feet from the street, which is far more, being tased into the street, is far more dangerous, and on the clearly established piece, Your Honor, this court said in Newman v. Guedry, as well as Alton v. City of Baytown, that when no warning is given, when no other use of force is tried, when, when those things are present, it can be a clearly excessive use of force to tase someone. In fact, when tasing someone is the first indication that they've done something wrong, this court has said that that can be an excessive use of force. In this case, Ms. Pena had committed no crime. She was simply running away from her car, and that's something she had the legal right to do. She had not been detained. She was not under arrest, and she was not the suspect of a crime. There was no headlong flight in a high-crime area. They were in the parking lot of the police station. So the severity of the crime, in Ms. Pena's view, weighs in her favor. Now, whether she posed an immediate threat to the officers, again, in looking at the complaint, there's no evidence that she had any weapons, and as far as posing a threat to herself, again, there's no evidence that she was going to run into the street. And looking at just her complaint, she doesn't even mention this, and there's nothing that says she was suicidal or anything like that. Her complaint denies any physical resistance? The Second Amended Petition doesn't even mention it. Her proposed federal complaint denies any physical resistance or contact with anyone. All it says is that she ran away, got out of the car, and ran away. What use do we give, if any, to the police report? First tell us what the police report said that's significant here to our issues, and then what use should we make of it? Certainly, Your Honor. Officer Vela's police report said that she was resisting him, and that she, I believe, has punched him in the chest as she was trying to get out of the vehicle. In this case, I would argue, citing Wilson v. Bernberg, that every inference has to be and every doubt resolved in favor of the plaintiff, we would argue that to the extent that police reports conflict with the complaint, they should be disregarded, and the complaint should be used. Procedurally, how did the police report come to the court's attention? They were attached in error by the trial counsel to the complaint. They were not specifically incorporated in the Second Amended Petition. They're not mentioned. They were just attached to it. All right. But we do, so you can't complain that we don't consider it because it was attached, and our general rule is that things attached to the complaint are to be considered part of the complaint. Certainly proper attachments, Your Honor, but to the extent they conflict with her, and the police reports themselves are conflicting. Officer Vela's report says at one point that she was running near traffic, at another point it says she ran into traffic, and it's all the same. There's no indication in Ms. Pena's complaint. She says she never got out of the vehicle. All right. So what do we do, though, with, I'm exploring this a little bit more, I don't mean to give you a hard time about it, but we do accept the complaint as it's pled, but if the complaint has something attached to it that is in direct contradiction on an important material fact issue, then how do we handle that? Your Honor, I would argue that because all the inferences have to be made in her favor at this stage, at the motion to dismiss stage, they have to take what the complaint said is true. For example, in the Scott versus Harris scenario where it was video evidence that contradicted the complaint, that's a different scenario than this case. The police reports are not... Well, was the video evidence there attached in some way to the complaint or included in the complaint, or was it something that was produced maybe on summary judgment? I believe that was at the summary judgment standard, Your Honor, or at the summary judgment stage, excuse me. Well, so I guess what I'm saying is if it's attached, maybe it was a mistake to attach it to the complaint, but that was done, and I know you had nothing to do with that, but if we consider everything in the complaint in favor of what's pled, you know, part of what's pled is the police reporting the facts there, so it seems to me maybe that undermines our reading of the complaint. Your Honor, again, to the extent that they're conflicting, I think we have to look at the complaint. Otherwise, I think we're into the territory of weighing facts, which is something better done not at this motion to dismiss stage, but at the summary judgment stage. And again, Officer Vela says that she was running in or near traffic. Officer Salinas doesn't even mention that. Officer Salinas, Lieutenant Solis' complaint says that she was running... One says she's running towards a busy main street. Another says she's running towards Mirasola Street, which is a back alley. These are all things that are better decided at a later stage of this case where there's differences in fact. This is a question for a fact finder to discover or at least to flush out during discovery at the summary judgment stage. Your Honor, on the excessive force to overcome qualified immunity on a plea of excessive force, and again, we contend that all the gram factors weigh in Ms. Pena's favor. On the third one, excuse me because I didn't finish that, resisting arrest or attempting to evade arrest by flight, Ms. Pena was not under arrest. She was never in fact charged with any crime. She was not told she was under arrest. The only thing she was ever told was, get out of the vehicle or I'm going to tase you, which she did get out of the vehicle. So in that case, she can't be resisting arrest or attempting to evade arrest by flight if she's not under arrest. On the qualified immunity piece, the clearly established piece, this court said in Darden v. City of Fort Worth just this last August, that it has been settled law since 2005 in this jurisdiction that you cannot tase a non-resisting arrestee without any of these things I've been talking about, a warning, trying some use of other force, even a command. There's no evidence that she would have disobeyed a command. And if you can't tase a non-resisting arrestee without these things, then it's certainly clearly established that you can't tase a non-resisting non-arrestee in the back of the head while she's running away without so much as telling her to stop. Stop or I'm going to tase you. Your Honors, Ms. Pena pled all this in her second amended petition, which was enough to make it past the motion to dismiss stage. Now in her proposed federal complaint, which was attached to her motion for leave to amend, which was denied in this case, she pleads that their city had a failure to train. And the inadequate policy, training policy that she points to, it's twofold, that their city employed uncertified taser trainers and that a number of officers were not trained in the taser at all. The causation is clear in that case. Ms. Pena's injuries were caused by the negligent use of a taser. Officer Salinas did not stop running before she aimed. She tased her in the back of the head without warning. All things which, by the way, are not suggested by taser's policies. So the city doesn't have, has policies that are at odds with the taser manufacturer's injuries in the back without giving them some sort of warning are all things that should be avoided in every case possible. Here it was possible to avoid it. There were four officers on this scene outside the police department and they didn't so much as give her a command to see if that would work first. When she was not running towards the main street, but in fact she was running towards a back alley. And Your Honor, on the point about the police report that a car might have been coming, again, we're looking outside the complaint here and I acknowledge that before I say this, but a quick, even simple aerial Google search shows that you can't even see down the street she was running toward from where the officer was. And that's just another piece of evidence as to why we have to look only at the complaint at this stage. These are all things that need to be determined at a later phase of the case. On the Texas Tort Claims Act piece, City of Watauga would seem to govern this case because it says that a claim for excessive force is an intentional tort, where sovereign immunity is not waived. And the court said, where an arrest lawful at its inception escalates into an excessive force situation, that is an intentional tort. There are two issues to point with that. First of all, this was not a lawful arrest. That's one distinguishing factor. Second, in District of Columbia v. Chin, which was a DC Court of Appeals case, which the That case said that a negligence action can be maintained in this situation. It just has to be pleaded separately from the intentional tort. And some of the things the DC Court cited, which may give rise to a negligence action in this type of scenario, is a negligent misperception of a threat, which leads to the use of force. Negligent, for example, aiming of the taser device. Things that happen before the initial force is applied, which is when she pulled the trigger on the taser. In Ms. Pena's proposed federal complaint, attached to the motion for leave to amend, she pleads that Officer Salinas misperceived the threat that she was going to run into the road, which led to her tasing. That the aim was negligent, that Officer Salinas failed to stop running before she deployed the taser, and that she aimed it at Ms. Pena's head. So a negligence action could lie. Your Honor, this leads naturally to my second point, which is that justice requires that Ms. Pena be given leave to amend her complaint. Rule 15, as is well known, evinces a bias in favor of leave to amend. This Court said in Smith v. EMC that you need a, quote, substantial reason, a district judge does, to deny a motion for leave to amend. In this case, the district judge denied it on futility grounds alone, which means that this Court's standard overview is de novo. And that was the, excuse me, Stripling v. Jordan Productions says that a futility analysis is supposed to be a 12B6 type analysis. On this case, the district judge did not even consider Ms. Pena's proposed federal complaint, which was attached to her motion for leave to amend. The district judge only considered changing the style of the case, adding a party, and redacting confidential information from the police reports. And that is what her ruling was based on, on the leave to amend piece. This Court said in Thomas v. Chevron, and there's a quote, that the precise content of Thomas' request for leave to amend was not immediately apparent. But nonetheless, this Court looked past that and looked through the pleadings because of that bias in favor of granting leave to see that Mr. Thomas sort of made out that he should be given leave to amend his complaint. In this situation, Ms. Pena attached a completely new proposed federal complaint. And in that complaint, she pleaded additional facts on each and every cause of action in her attempt to comply with the plausibility standard. On the excessive force against the individual officers, she pled additionally that she was continued to be tased while she was on the ground. And in Anderson v. McCaleb, this Court said that that alone can be excessive force. If someone is tased when they're lying, the tasing continues once they're on the ground. She pleaded that the officers use the taser in contravention of city policy, specifically naming policies in her complaint. And she pleaded that Officer Vela fabricated things in his police report. On the Monell claims against the city, she pleaded that the city, additionally, that the city maintained policies at odds with taser's manufacture guidelines and that there was the failure to train that I mentioned earlier. And on the Texas Tort Claim Act, she additionally pled those misperception of facts, things that I already went through. She said enough in her proposed federal complaint. It was an entire, complete complaint. And where the district judge did not even address that or even look at it, ruling, denying that on futility grounds is inappropriate. If Ms. Pena was not going to be given leave to amend her complaint, they needed to judge the complaint by the Texas Notice Pleading Standard, which was the standard the complaint was drafted to comply with. This Court said in Taylor v. Bailey Tool Manufacturing that state procedural rules govern portions of a case that happen before the case is removed, even if the case is later removed. And it cited specifically that sufficiency is one of the things that state procedural rules will govern. And again, in Tompkins v. Sear, this Court said that federal rules don't apply to portions of a case that happen before the case is removed. Back to the substance of the tasing incident, address two things for us. Number one, under the case law, does it matter that she was a juvenile? That's number one. And number two, does it matter that if she was suspected of a crime that it would have been a misdemeanor rather than a felony? Those are two separate, unrelated questions. Yes, Your Honor, both of those things do matter. On the juvenile piece, it matters because in Outen v. City of Baytown, this Court said that the fact that Ms. Outen, her physical characteristics and her demeanor and all of those things mattered. So she was a slight-built woman who was tased in the back in a very similar situation to this. Ms. Pena was a juvenile, was small, and I think since it's a totality of the circumstances analysis under the Fourth Amendment, it of course matters when it comes to her ability to understand commands by the police. The police need to be very explicit with what they say to her. So absolutely, I think the juvenile piece matters. On the crime, even if it was a misdemeanor, Apelli's brief suggests that she was guilty of disorderly conduct, which she was not charged with. That is a post hoc rationalization in our view. But in Newman v. Guedry and other cases, even in Outen v. City of Baytown, this Court said that Ms. Outen could have been a misdemeanor. She could have been suspected of a misdemeanor. That still, that would be a closer case, but it still does not allow tasing someone without a warning. And in fact, in Newman and Outen, in Darden of City of Fort Worth, all of those cases, there was more justification for the interaction. So in Newman v. Guedry, it was a traffic stop that they had probably. So there's no case law out there that says tasing can be used for an investigative detention, a Terry-type reasonable suspicion? No, Your Honor. I'm not aware of that case. And in this situation, the officers didn't even have enough for a Terry stop. If we do decide you've pled a constitutional violation, would you think we would remand as to the issue of qualified immunity? Your Honor, I see my, may I have leave to my time is expiring? Of course, you may answer, yeah. Your Honor, in our view, Ms. Pena pled enough on the clearly established piece to overcome qualified immunity by pointing to the fact that no reasonable officer would have done this and by citing that. But if this court were to find a constitutional violation, it would certainly be appropriate to ask her to replete on the qualified immunity issue. That way we'd know for sure that the plausibility standard applied and governed this case. Thank you. So what is the specific relief that you're asking for? If we were to write an opinion and decide the case in your favor, what would the final sentence or two of the opinion say in terms of the result? Two pieces, so two sentences, Your Honor. That Ms. Pena stated a claim for excessive force against the individual officers in her second amended petition, first of all. And that this court remanded the case to give her a chance, give her leave to amend her complaint so that she can attempt to comply with the federal plausibility standard, especially since the district judge didn't even consider all of these allegations in her attached proposed federal complaint. All right. So we would, under that, you've answered my question directly and I appreciate that. Under that formulation then, this panel would not be addressing specifically the qualified immunity issue. Is that right? Unless you went with her second amended petition stated a claim, then that would, inherent in that would be that she stated enough to overcome qualified immunity. Certainly the easiest off ramp, I would argue, is remanding to allow her to replete to attempt to comply with the federal plausibility standard. She hasn't even been given one chance. All right. Thank you, Mr. Jones. Thank you. Thank you. I appreciate you've saved time for rebuttal.  Mr. Aguilar. May it please the court and counsel. I'll try to take the arguments raised by appellant in the order that they were presented. My name's Arnold Aguilar. I represent the Apalis. Before I get into that, though, I would like to discuss the facts a little bit because I think the facts do matter. In this case, what happened was a 17-year-old girl, you asked about a juvenile, a 17-year-old girl, had been reported as a runaway before and was brought to the police station by her father. There was a disagreement, a struggle, at the very least, between the girl and her father. Officer Vela shows up, tries to secure the scene. There's a disagreement as to whether she struggled with Officer Vela or not in the back seat of her vehicle before she ran out the other door down the street and as officer, shortly after Officer Vela showed up, Lieutenant Solis and Officer Salinas showed up. As she ran out, Lieutenant Solis said, taser, taser, taser, three times, at which point Officer Salinas deployed her taser, struck one prong in the back and one prong in her head. She fell down right next to a stop sign. To describe to the court, Main Street runs like this, Washington Street runs like this, Mira Solis runs like this below it. Mira Solis is something between an alley and a street. It is frequently used as a street. Washington is blocked by buildings on both sides. Let me ask you this. Let's suppose a father and a child, a five-year-old, are standing on the street corner and they're to run out into traffic. It would police be authorized in tasing the five-year-old to save their life from being hit by an SUV? I guess it would depend a lot on the circumstances specifically. In that general circumstance and the way the question is worded, obviously nobody wants to tase a five-year-old. It would be a serious question. Would they be authorized to taser a five-year-old when they saw that their life was in danger? If they saw their life was in danger, I believe they would. Because think of it instead in terms of, let's say the officer was standing next to her or just talking to somebody, and at that point the officer noticed she's getting ready to run into traffic, her back is to traffic, she doesn't see traffic, and he just pushes her out of the way. Instead of just tasing her, let's say he just pushed her out of the way. This is not an arrest circumstance, it's just for her safety. The officer is entitled to use some degree of force in order to protect the public, even to some extent. From themselves. I'm sorry? They haven't done anything to violate the law. Right. In other words, what I'm saying is to some extent the officer has some authority, mistaken but reasonable beliefs of the need to take certain action are justified. I'm sorry, I can't find that specific. But all of this. I'm sorry? By you're starting out saying facts matter and pointing out the Graham factors are very complex and we could have these suicides on the verge of jumping off a bridge, you might want to just exige circumstances. Those all sort of beg to get past the dismissal stage. I mean, this is a very rich and complex sort of narrative. Police may have been trying to help, could have been reasonable or unreasonable, but it doesn't really address their frontal point that the district judge dismissed this at the outset. Right. And we're talking about two different things. One has to do with whether that particular circumstance would justify an officer's action. What I was going to refer to as a Saucier case, a mistaken but reasonable belief of a potential danger justifies using more force than may have been needed. In this particular circumstance... Do you have a case where the police used excessive force and it was okay on a citizen when they were not suspected of any crime, they were not under arrest, that officers can use force on a person under those circumstances? Not one where he was not suspected of any crime. The one I would refer the court to is one that came out last September, out of this court, the Zimmerman v. Cutler case, September of last year, just a month before the court's opinion, involving an officer shows up to the scene. There's a discussion, not really a fight. One of the guys runs. The officer pursues him, tases him. He falls down and hurts himself, breaks his arm. That was one circumstance, one case, which this court concluded that even though they didn't... He suspected there was disorderly conduct, just like in this case. But in that case, the court said the fact that they suspected that there might be something was enough to justify using the taser in that circumstance. What I was going to get at in this particular case, Your Honor, had to do with the analysis we were applying at this stage as for qualified immunity for the officer. Violated clearly established constitutional rights, and the question is whether at the time of his actions, and getting back to the question Judge Owen had, at the time of his action, was his action clearly in violation of constitutional standards? Was it clearly established that doing that was in violation of standards? In particular... Pardon me. In particular where there was no prior ruling as... From my understanding, no prior example of pushing the suspect or pushing the person out of harm's way to protect him from some higher danger. There's no prior case law saying that that would be a violation. I think when you're looking at whether he violated clearly established constitutional rights, it would be hard-pressed to argue that he was clearly in violation. It's an objective standard, objectively unreasonable. And again, for qualified immunity, it requires heightened pleading. But here, too, we're in a world where the district court never got to any of that. I'm sorry? The district court never did any qualified immunity analysis, and so it's difficult for me to follow the argument because it seems like you have very different arguments here. One is that there was some level of suspicion. She had committed to some level of convincing force, some misdemeanor disorder. The other version that's being said to us is, no, not at all. We were trying to protect her from herself. Well, actually, I recognize... Are they both? Go ahead. I recognize that difficulty right off the bat, and that's what I was going to point out to you is that's the difficulty we have here is how you choose to analyze it. Are you choosing to analyze this case as an officer who did not have somebody under suspicion and who was trying to take action for their benefit, mistaken but reasonable belief? Well, we're limited to the complaint. I'm sorry? We are limited to the complaint. Well, I understand, and that's why I'm saying is when you're looking at the complaint and you're looking at what the officers did and you're looking at what the facts are, officers' reports, and you're looking at her allegations, you have to deal with all of them together. And when you're looking at all of them together, you do have these facts that... Well, what's your best case for that? It was an unusual set of circumstances that got the police reports, but you heard questions to opposing counsel. Why would we deal with all of them together, even if she mistakenly attached them? Well, the question... In other words, if we're going to say you didn't even plead an excessive force case, wouldn't we just look at whether and what she pled, and she didn't... There's no suggestion there she was violating a law, or is there even a suggestion that she was running into an SUV? Well, under TELL Labs, I think you have to consider the attachments. Now, the question is... Well, she also asked to amend, and I assume that she would take that off of her amended complaint. I know, and that's what I was going to mention. In other words, you have to consider it. So now, she wants to take it off, say, Kings X. I don't want to have those allegations anymore. So now, I don't think there's any case that authorizes you to completely disregard the prior documents. Let's say, instead, there was a protective order, and the plaintiff wanted to complain that everything they did was hunky-dory, and they attach a copy of the protective order saying he was not allowed to be near the house. Well, now he wants to take it away. Are you going to not consider that protective order? Well, even if you're right, and I'm not at all sure you are, about the police reports, then what is the narrative? Is it that they were responding to a level of suspicion, or do the police reports say, we shot her to keep her from getting run over? And what I'm trying to say is – No, I'm asking you the question. Which is the narrative if we accept the police reports? What's the Graham Factor narrative? What I'm trying to say is, under either scenario – I know, but I'm asking you, which do the police reports support?  as part of an arrest. My understanding was it happened in a very short amount of time. As she ran down, Lieutenant Solis saw the vehicles approaching, crossing, and there wasn't a lot of room for – So it was a safety? It was a safety issue. My understanding is what the officers were doing was strictly for safety. I have to also respond for purposes of qualified immunity that even if it was for purposes of her arrest, they had a basis for her arrest because it was a disorderly conduct, and they could have tased her. And they would have been justified, especially based on the Zimmerman case, which says that – It's always difficult for me when a counsel says, based on a case that existed before you filed the brief, that we haven't heard and they haven't heard. So what about based – finish that sentence with a case you cited to us. And I don't have anything specific that I cited to you. There's a number of cases that just basically say the officer has authority under reasonable suspicion. If he has a reasonable suspicion that the person's violating the law to stop them. Now, I would agree that it is not good practice to tase somebody while they're running. And I agree that their allegations are that – or at least in the amended petition, that they shouldn't have done it while somebody's running. But just the fact that they perhaps shouldn't have does not constitute a violation of his entitlement to qualified immunity. Wasn't there tasing after she was down? What happened was they wanted to make the imposition, the assumption. What the police report said as the lieutenant's police pulled up, he said, is that thing off or turn that off or something like that. As the evidence did end up showing, there was only one cycle. It's a five-second cycle. And it wasn't – it all happened pretty quickly. And by the time it was done, she was on the ground and the taser might have still been discharging for a total of five seconds. But there was no more than one cycle. There was that allegation in a sense, but it was based on the officer's report, which didn't say that there was more than one cycle. My point getting back to the Fourth Amendment, the claims against Salinas are the ones where you have to decide whether or not it's – whether it was a pursuit issue or whether it was a for-her-safety issue. As to Lieutenant Solis, on the other hand, they try to argue that because he caused her to be tased, that he is liable. They try to make it as a direct liability, but it's not because he did not actively participate in the tasing. What he did was he gave the order, and that's the extent of their allegation. That is really a supervisory allegation, an allegation of supervisory liability, not individual liability. And for that, you have to show that he was deliberately indifferent and, again, did not do so just to punish her or was somehow relating to the disorderly conduct allegation. In his circumstance, he did nothing more than give the order to tase, and as a supervisor, you have to show under the Evatt case, it says that you have to have something more of deliberate indifference to be able to show he should be liable for that allegation. The claims against the city, on the other hand, you've got either the customer policy showing that they had to have some evidence of customer policy showing that this was going to happen, and they identified they made some allegations, but they identified no basis to establish that the city actually passed that or adopted such a policy. And the second one mainly had to do, which seemed like the main argument, had to do with insufficient training or deliberate indifference in their training, but they identified no other training. First, they didn't identify any of the training that these officers did get or even make reference to it. They just said they should have had more. The Zimmerman case also discusses that, which basically comes down to you didn't even identify, you didn't identify the specific training, you didn't identify any training, much less any specific training, that should have been used or that should have been applied. And without that, you can't get to the deliberate indifference for not having the training. The whole purpose of that is that they knew this would have happened, and because this was the only tasing incident that's ever been referenced or that I'm aware of, you can't get to that they should have known this was something that would have happened. I'm going to jump over to the Tort Claims Act, unless you have something else on this. On the Tort Claims Act, the Gordon case is the one that the Supreme Court specifically said, look, if you did it deliberately, intentionally, then it is not a negligence claim. They want to try to argue that negligence includes being a bad shot, but it's not. The fact that one prong struck the back of her head is not evidence of you aimed it badly. Taser prongs aren't designed to have pinpoint accuracy. The fact that you shot it and you intended to shoot it is what the Supreme Court has said makes the difference in terms of distinguishing between negligence and intentional act. I think Judge Owen's opinion in Bustos v. Martini Club discussed some of that, where he said the Fourth Amendment claims require elements of intentionality as opposed to just negligence. Here, where they're claiming that the liability, the whole basis for the damages came up because we tased, or the Officer Salinas tased her. For the Fourth Amendment, you have to show it was intentional, which means you can't say it was negligent under the Tort Claims Act. It's one or the other. Because they're making a Fourth Amendment claim, I think they'll have difficulty establishing that. Now, jumping over to the leave to amend her complaint, what the judge found in the amended complaint was basically all she had added was conclusionary allegations. She added conclusions. She didn't identify how any policy was adopted. She didn't identify any allegation of how the city had uncertified taser trainers. We can review that. Excuse me for, I don't mean to interrupt you, but we can review that conclusion de novo, can we not? We can examine the proposed complaint to see whether, in fact, it is sufficient. I agree. This is a de novo review. And what I'm saying is in looking at those, she makes just general allegations. And by doing that, it's a conclusion rather than, I'm going to call it evidence, but it's not evidence. It's the facts, the facts that would establish the basis to say, here's how the city had a customer policy, not just they had a custom and policy of doing this. And the same thing for the police reports. As we discussed earlier, you can't just ignore those. The fact that she wanted to add Officer Vela is kind of irrelevant. It's just another person who would have been liable. Now, the judge found those are the things that she claimed were changed in the proposed amended complaint. They make a couple of arguments. One is that the motion for leave should always be granted. I would suggest no. It should be granted if it would make a difference. It does not necessarily get granted if it doesn't add anything new. And what the court found is it wouldn't grant anything new. Specifically, if it could be granted for everybody regardless all the time, then the futility doctrine is pointless. The whole purpose of the futility doctrine is to avoid or prevent the filing of documents or additional amendments, which wouldn't change anything. Clearly, if a complaint as amended is subject to dismissal, leave to amend need not be given out of the Simmons case. The other thing I did want to point out, and there's one new thing I wanted to add that wasn't in our brief. First of all, the difference, I did argue in the brief that the difference between the federal and state standards is not that different. In doing my research and getting ready for this hearing, I did run across an additional argument relating to Texas Rules Civil Procedure 91A, the motion to dismiss, which has been likened to the 12B6 motion. It's a state version of the 12B6 motion. In that, you can dismiss a case like the 12B6 if they fail to state a claim. It has some other matters. The reason I mention that is because at least one of the cases has argued that because it's the same, the standard that you apply in reviewing the 91A is the same standard you apply in reviewing the 12B6. Initially, it was a go-daddy case, and I apologize. These were not previously provided to opposing counsel, but I just came across them recently. The go-daddy case talked about the plausibility standard, and that was out of the Beaumont Court of Appeals. After that, the Texas Supreme Court picked up Dallas v. Sanchez, which referenced a factual plausibility standard, which they said is akin to a legal sufficiency review. Then afterwards, you have the Corpus Christi Court of Appeals in fairness saying, no, we still apply the fair notice standard. The reason I mention that is just to say that the standards are actually not that different. Actually, in another case, Woolley started referring to it as a sui generis, meaning you have to consider it in and of itself, which separates it from plausibility or fair notice standards because now you're just looking at it's an animal unto itself when you're looking at 12B6. Again, when we're talking about each of these claims, especially with qualified immunity, it's a heightened pleading standard. I'm going to run out of time. If I could have just a moment. You can finish your sentence. The only thing I want to add is because of those differences, it is something that has to be looked at independently, and because of that, I think the judge was correct in finding that there was no need or reason or basis to authorize admission of this additional document. I would ask only that the judgment of the trial court be affirmed. Thank you, Mr. Aguilar. Mr. Jones, you saved time for a vote. Thank you, Your Honors. Very briefly, I want to clarify my last point that I was speaking of when I was up here about what the last two sentences would be of the opinion. Our arguments are in the alternative. If this court were to find that the second amended petition stated a claim, this court would remand the case for discovery to begin. If the court were not inclined to find that and they were inclined to give Ms. Pena leave to amend her complaint, that would be an alternative, and this court would give her leave to amend on remand. Those were my two arguments, and the alternative, I wanted to clarify that. On Apelli's new argument, and I apologize, I cannot cite you a specific case for this because this was not mentioned in either of the briefs. Texas is still a notice-pleading state, and as Apelli acknowledged, there are cases on either side of this issue with Texas courts of appeals saying, no, we apply a fair notice standard and others saying it is akin to a plausibility standard, not that it is a plausibility standard. Either way, the Texas Supreme Court has not said, neither has the legislature or anyone said that Texas is not a fair notice-pleading state. It certainly is. On the heightened pleading issue that he mentioned for qualified immunity, the district judge cited an unpublished pre-Twombly-Iqbal case for the proposition that qualified immunity claims must be pleaded to a higher standard, and even under that standard, all that was required is identification of individuals involved, Officer Salinas and Lieutenant Solis, and acts which give rise to a constitutional violation, the tasing in the back of the head. Moreover, on the argument on leave to amend, the district judge never considered the proposed federal complaint. There's no way whether she knew it was futile or not because she didn't consider it. And finally, Your Honors, opposing counsel stood here and described the streets and described all sorts of facts to you all, facts that are not in the record as to why they were at the police station, what the streets look like. That is the perfect example of why this case was premature. Or the traffic conditions. Or the traffic conditions, any number of other facts. It's a perfect example, I think Your Honor read my mind, of why this case was prematurely dismissed. There are a lot of facts still in dispute. At this stage, the plaintiff's complaint must control. Thank you, Your Honors. We ask that you reverse and remand if there are no further questions. All right. Thank you, Mr. Jones. Your case is under submission, and we wish to thank the William & Mary Law Clinic and Mr. Breckenridge, you also, for your continued good supervision. Thank you, Your Honor.